

FILED

*8:05 am, 3/13/26*

**Margaret Botkins**
**Clerk of Court**

**Bubblr, Inc. — Draft Rebuttal with General Denials and Affirmative Narrative**

For counsel's review and editing. This document (i) states general denials and an affirmative narrative and (ii) provides a point-by-point draft rebuttal (1–60).

## 1. General Denials

Except as expressly admitted, Bubblr, Inc. denies each and every allegation and denies that GHS Investments LLC is entitled to the appointment of a custodian or receiver. Bubblr denies that its officers or directors have engaged in fraud, misappropriation, or corporate malfeasance, and denies that the statutory or equitable prerequisites for receivership have been met. Bubblr further denies that GHS will suffer irreparable harm absent receivership and asserts that any dispute is, at most, a contractual dispute with adequate remedies at law. Bubblr reserves all defences and objections, including jurisdiction, venue, standing, and failure to meet the extraordinary standard for a receiver.

## 2. Affirmative Narrative (Key Facts for Context)

- **Management transition and stabilization.**

The company's history reflects that key early arrangements were made under prior executives/directors. After their departure, the founder/CEO returned to stabilize operations and maintain public-company reporting.

- **No insider enrichment under current leadership.**

The company's history states that since February 2023, the CEO, directors, and financial controller have taken no salary, and that expenditures were directed to product development, patent protection, and SEC/audit compliance.

- **Transparency and reporting.**

Bubblr asserts it has remained a fully reporting issuer with audited filings, providing transparency into its financial condition and operations.

- **No paid stock promotion or involvement in third-party promotional materials.**

In response to an OTC Markets inquiry dated August 18, 2025, the company publicly stated it first became aware of third-party promotional materials on that date; denied any direct or indirect involvement, payment, or editorial control; denied any relationship with the named promoters; stated it had not engaged any third-party investor relations/public relations/marketing/promotion services in the prior 12 months; and disclosed only a limited private sale of 1,307 shares by the CEO in the prior 90 days.

- **Active fundraising and structured non-U.S. capital raise.**

The company has engaged an exclusive capital-raising advisor under a written engagement dated 18 September 2025 to raise up to £5,000,000. The engagement contemplates a non-U.S. fundraising framework under Regulation S (no solicitation or sales to U.S. persons and no directed selling efforts in the U.S.).

- **Commercialization and route-to-market initiatives.**

The company has publicly announced product commercialization steps, including making AI Vault available via AWS Marketplace and entering a distribution/reseller arrangement with Ingram Micro intended to expand sales reach and support cash-flow improvement.

- **Receivership would be value-destructive.**

Given the foregoing, a receiver would disrupt financing, commercialization, customer relationships, and enterprise value at a critical time. Less drastic alternatives exist and should be preferred.

## 3. Source Documents (for Exhibits)
- Served petition/summons packet (U.S. District Court, District of Wyoming)
- Company history/current position document (Ethical Web AI/Bubblr)
- Mayfair fundraising engagement letter dated 18 September 2025 (raise up to £5,000,000; Regulation S / non-U.S. solicitation framework)
- Press release dated 21 August 2025 responding to OTC Markets promotional activity inquiry
- Press release dated 13 May 2025 re AI Vault submission/availability via AWS Marketplace
- Press release dated 12 August 2025 re distribution deal with Ingram Micro and AI Vault 1.5 (Beta)
- Email from GHS demanding an increase of their reserve to 500m shares

## 4. Point-by-Point Rebuttal (1–60)

| Allegation (Petition Point) | Bubblr Response (Draft) |
|---|---|
| 1. GHS Investments LLC is a Nevada LLC with principal office in Jericho, NY. | Lacks knowledge as to GHS's formation or principal place of business; demands strict proof. |
| 2. Bubblr, Inc. is a Wyoming corporation with principal office in Sheridan, WY. | Admitted as to Wyoming incorporation and registered office to the extent reflected in public records; otherwise demands strict proof as to any characterization of "principal place of business." |
| 3. Federal jurisdiction is proper; amount in controversy exceeds $75,000. | Denied to the extent it asserts legal conclusions not established; Bubblr reserves all jurisdictional defenses for counsel. |
| 4. Venue is proper in the District of Wyoming. | Denied to the extent it asserts legal conclusions not established; Bubblr reserves all venue defenses for counsel. |
| 5. Petitioner incorporates prior allegations by reference. | No response required; Bubblr denies any allegation not expressly admitted. |
| 6. GHS seeks appointment of a custodian/receiver for Bubblr. | Denied. Receivership is an extraordinary remedy and is unnecessary and harmful. Bubblr is operating, maintaining SEC reporting, and pursuing financing and commercialization; less drastic remedies exist (e.g., standstill/forbearance, reporting covenants, escrow). |
| 7. Proposed receiver/custodian (Robert Stevens) is qualified and independent. | Lacks knowledge and demands strict proof. In all events, Bubblr denies any receiver is warranted regardless of the proposed individual. |
| 8. Stevens has experience and receivership association membership. | Lacks knowledge; demands strict proof. Qualification does not establish necessity. |
| 9. Stevens has not been removed or sanctioned previously. | Lacks knowledge; demands strict proof. |
| 10. GHS invested in Bubblr under an agreement. | Admitted only that historic transactions occurred; denied as to any implication of misconduct, diversion, fraud, insolvency, or necessity of receivership. |
| 11. March 2022: $300,000 disbursed for preferred stock plus incentive shares. | Lacks knowledge as pled without reviewing the operative instruments; demands strict proof of dates, amounts, and terms. |
| 12. GHS received a Certificate of Designation for the investment. | Lacks knowledge as pled; demands strict proof of the filed and operative terms. |
| 13. A Series C preferred amendment was filed in Wyoming in March 2022. | Lacks knowledge as pled; demands strict proof of filings and operative provisions. |
| 14. Bubblr agreed to issue a warrant for additional shares. | Lacks knowledge as pled; demands strict proof of warrant terms and any conditions precedent. |
| 15. Additional funding and warrants were issued at specified exercise prices. | Lacks knowledge as pled; demands strict proof of each alleged closing and governing documents. |
| 16. Additional closings occurred after conditions were met. | Lacks knowledge as pled; demands strict proof (including whether conditions were satisfied). |
| 17. April 2022: $200,000 disbursed for preferred shares and warrants. | Lacks knowledge as pled; demands strict proof. |
| 18. May 2022: $100,000 disbursed for preferred shares and warrants. | Lacks knowledge as pled; demands strict proof. |
| 19. June 2022: $100,000 disbursed for preferred shares and warrants. | Lacks knowledge as pled; demands strict proof. |
| 20. August 2022: GHS waived certain provisions | Lacks knowledge as pled; demands strict proof of the |

| | |
|---|---|
| regarding lending in the Certificate of Designation. | waiver's scope and effect. |
| 21. GHS waived rights to allow the founder/CEO to loan Bubblr $600,000. | Denied insofar as it implies wrongdoing. Founder funding was undertaken to preserve operations and enterprise value after prior leadership departed and the company faced legacy obligations. |
| 22. Steven Morris is Founder/CEO/President/CPO/Chairman. | Admitted generally; denied that this supports any inference of malfeasance. The company history reflects Mr. Morris returned in 2023 to stabilize operations after prior executives/directors left. |
| 23. Bubblr failed to honor obligations under the Agreement and Certificate of Designation. | Denied. Bubblr disputes breach and denies bad faith. Any dispute is contractual with adequate remedies at law; it does not justify receivership. |
| 24. Bubblr concealed or mischaracterized the use of proceeds. | Denied. The initial GHS arrangements and early use-of-proceeds decisions were made under prior executives/directors; current management has operated under audited SEC reporting and denies concealment. |
| 25. Morris inflated a note and misappropriated funds. | Strongly denied. Since February 2023, Mr. Morris, directors, and the financial controller have taken no salary, and expenditures have been for development, patents, and SEC/audit compliance. |
| 26. Other shareholders are complicit in harming GHS's interests. | Denied; conclusory; demands strict proof. |
| 27. Bubblr diverted proceeds to insider compensation and improper uses. | Denied as to current management: no salary has been taken by Mr. Morris/directors/financial controller since February 2023; spending has been directed to operations and compliance. |
| 28. Bubblr engaged in selling activity adverse to investors while concealing material facts. | Denied. Bubblr is fully reporting with audited filings and denies any scheme to conceal material facts or injure investors. |
| 29. December 2024: GHS attempted conversion at $0.01/share; Bubblr refused. | Denied as characterized. Conversions are governed by the operative instruments, corporate authorization, and applicable market/regulatory constraints; Bubblr denies bad faith. |
| 30. September 2025: Morris proposed issuing 7.5 million shares instead of honoring conversion. | Denied as characterized; demands strict proof of the alleged communications and context. Discussions occurred amid ongoing dispute resolution and concerns about value-destructive dumping. |
| 31. A "Stock Promotion" flag existed and impacted actions. | Denied. Bubblr publicly stated it first learned of third-party promotional materials through an OTC Markets inquiry dated August 18, 2025 and denied any involvement, payment, or editorial control. |
| 32. Morris was complicit in stock promotion activities. | Unequivocally denied. Bubblr stated it had no relationship with Stellar Partners LLC or Penzance Partners LLC, never paid them any amount, and after inquiry of insiders and service providers found no involvement in creating, distributing, or funding the materials. |
| 33. Settlement proposal was $1.2 million payable in two stages (Oct 1, 2025 and Feb 1, 2026). | Denied as to any binding obligation absent a fully executed settlement agreement; demands strict proof of executed terms and conditions precedent. |
| 34. If first payment not made, shares were to be | Denied as to enforceability; demands strict proof of final |

| | |
|---|---|
| issued instead. | executed terms and corporate authorization. |
| 35. GHS refrained from action based on these discussions. | Denied; demands strict proof of reasonable reliance, causation, and damages. |
| 36. GHS's counteroffer was never accepted and was delayed by Morris. | Denied. Bubblr has pursued resolution in good faith while balancing corporate obligations, authorization limits, and the need to avoid value-destructive outcomes. |
| 37. Negotiations continued until Bubblr went silent. | Denied; demands strict proof. |
| 38. Bubblr did not issue shares or make payment by December 1, 2025. | Denied as a basis for receivership. Any dispute is contractual and does not meet the extraordinary standard for a receiver, particularly given active financing and commercialization initiatives. |
| 39. Bubblr defaulted on multiple obligations and withheld conversions. | Denied. Bubblr disputes default and denies improper withholding; conversion/issuance is governed by contract terms, corporate authorization, and applicable constraints. |
| 40. Bubblr acknowledged issuance was due but continued to withhold shares. | Denied as characterized; demands strict proof of any alleged admission and context. |
| 41. Bubblr failed to maintain an effective SEC registration statement for the preferred shares. | Denied as pled; demands strict proof of the specific obligation and alleged deficiency; Bubblr has maintained full reporting with audited filings. |
| 42. Bubblr failed to pay dividends when due. | Lacks knowledge as pled without the precise dividend terms and record dates; demands strict proof; denies bad faith. |
| 43. Bubblr executed convertible promissory notes in July/August/September 2025 totaling about $114,000. | Lacks knowledge as pled; demands strict proof. In any event, interim financings do not justify receivership where the company is pursuing substantial investment and channel-driven commercialization. |
| 44. Trading activity spiked around mid-July, mid-August, and mid-September 2025. | Denied as to any improper cause or company involvement. Bubblr denies sponsoring or paying for third-party promotional materials and denies manipulation. |
| 45. Stock was promoted/manipulated while insiders sold. | Denied. Bubblr stated it did not engage any third-party investor relations/PR/marketing/promotion services in the prior 12 months and denied involvement in the alleged promotional materials; it disclosed only a limited private sale of 1,307 shares by the CEO in the prior 90 days. |
| 46. An individual bought ~5.85% of Bubblr from Morris, showing Morris was raising money while failing GHS. | Denied as insinuated. Mr. Morris sold personal stock to raise funds and advanced funding to preserve operations and enterprise value; this is consistent with protecting shareholders, not harming them. |
| 47. SEC filings show total assets about $1.36 million and liabilities about $3.69 million. | Lacks knowledge as pled without citation to the specific filing/line items; demands strict proof. Bubblr notes that IP/patent value is not reflected on balance sheets for accounting reasons. |
| 48. Bubblr has a massive working capital deficit. | Denied as a basis for receivership. Bubblr is executing a credible path to liquidity via: (i) an exclusive fundraising engagement to raise up to £5,000,000; (ii) go-to-market distribution through AWS Marketplace; and (iii) a distribution/reseller arrangement with Ingram Micro, which the company has stated is intended to strengthen route-to-market and support cash-flow improvement. |

| | |
|---|---|
| 49. Bubblr had only ~$4,104 cash, showing immediate liquidity failure. | Denied as a basis for receivership. The company has maintained operations with founder support and is actively pursuing financing and commercialization; a receiver would impair these efforts. |
| 50. For the six-month period ending June 30, 2025, Bubblr suffered a net loss of ~$650,760. | Denied as a basis for receivership. Losses at a pre-revenue/R&D commercialization stage do not constitute malfeasance; Bubblr is transitioning toward revenue through enterprise product deployment and channel partnerships. |
| 51. Bubblr has cumulative deficits over $17.5 million. | Lacks knowledge as pled; demands strict proof. Denied as a basis for receivership given ongoing commercialization and financing efforts. |
| 52. Bubblr disclosed 'substantial doubt' about going concern. | Denied as a basis for receivership. Going-concern language is common for early-stage issuers; Bubblr is pursuing documented financing and commercialization initiatives. |
| 53. Related-party debt to Morris is ahead of investors, indicating insider preference. | Denied. Founder loans were provided to preserve operations and shareholder value; management states no salary has been taken since February 2023 and funds were used for operations/compliance. |
| 54. Bubblr has no accessible source of liquidity and is operating at a loss. | Denied. Bubblr has engaged an exclusive capital-raising adviser to raise up to £5,000,000 and has publicly announced material go-to-market channels, including AWS Marketplace distribution and an Ingram Micro distribution/reseller relationship intended to expand sales reach and support cash-flow improvement. |
| 55. Financial condition reflects insolvency or imminent insolvency. | Denied. Bubblr disputes insolvency and denies statutory/equitable prerequisites for receivership. A receiver would be disproportionate and value-destructive at a time when financing and commercialization initiatives are active. |
| 56. GHS estimates damages at approximately $1.9 million. | Denied. Bubblr disputes the amount and demands strict proof (including mitigation and credits for any sales/realizations). |
| 57. Appointment of a custodian/receiver is necessary to prevent further harm. | Denied. Bubblr has credible, documented alternatives (standstill/forbearance, reporting covenants, escrow) and is pursuing financing and commercialization. A receiver would disrupt these efforts and harm stakeholders. |
| 58. Wyoming Statute § 17-16-748 authorizes appointment. | Denied. Bubblr denies statutory prerequisites are met and reserves legal argument for counsel; at most this is a contract dispute with adequate remedies at law. |
| 59. Directors/officers are acting fraudulently or assets are threatened. | Unequivocally denied. Bubblr denies fraud and states it is operating under audited reporting with ongoing efforts to fund and commercialize its enterprise product. |
| 60. The Court should appoint a custodian or receiver with full powers. | Denied. The requested relief is overbroad and unnecessary; it would impair financing and commercialization and destroy enterprise value. Bubblr requests denial of the petition and such other relief as the Court deems just. |

**Signature:**

_____

Name:         Stephen Morris

Date:          11th of March 2026

Title:          CEO and Founder, Bubblr Inc.

Telephone:    +44 (0) 78007 999 86

Email:         steve.morris@ethicalweb.ai