Sean M. Larson, Wyo. Bar #7-5112
Connor J. Cassidy, Wyo. Bar #8-7270
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
slarson@hkwyolaw.com
ccassidy@hkwyolaw.com

ATTORNEYS FOR PETITIONER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| IN THE MATTER OF:<br>BUBBLR, INC.,<br>a Wyoming Corporation,<br><br>    GHS INVESTMENTS, LLC,<br>    a Nevada Limited Liability Company,<br><br>        Petitioner. | )<br>)<br>)<br>)<br>)   Case No. 2:26-CV-20<br>)<br>)<br>)<br>) |

## MOTION FOR APPOINTMENT OF
## CUSTODIAN OR, IN THE ALTERNATIVE, RECEIVER FOR BUBBLR, INC.

Petitioner GHS Investments, LLC ("GHS"), by and through undersigned counsel, HATHAWAY & KUNZ, LLP, submits this Motion for Appointment of Custodian or, in the Alternative, Receiver for Bubblr, Inc. ("Bubblr") as follows:

1.      GHS is a shareholder in Bubblr pursuant to the parties' Security Purchase Agreement on or about March 4, 2022 (the "Agreement"). *Id.*

2.      Bubblr diverted GHS's investment to salaries, did not allocate funds to the requisite purposes, defaulted on its obligations under the Agreement, and withheld conversions as required by the Agreement despite contractual maturity. *Exhibit 1 – Affidavit of Sarfraz Hajee*. Bubblr concealed or mischaracterized the use of the proceeds from GHS. *Id.* GHS communicated their concerns to Bubblr but were met with delay tactics and lack of communication. *Id.* GHS's

investments were, and are currently being, misappropriated for Bubblr's management's personal gain. *Id.* Irreparable injury is being threatened to or suffered by GHS as Bubblr is insolvent or in imminent danger of insolvency. *Id.*

3. Bubblr's current CEO continues to improperly convert and issue stock to himself as an insider, improperly sell such insider stock privately, and has failed to properly disclose these transactions publicly. GHS has reason to believe this has been a common practice by Bubblr's management, which continues to cause injury to shareholders for its own benefit. *Id.*

4. Management's consistent lack of disclosure, and gross mismanagement of Bubblr's assets and goodwill to the detriment of shareholders, urges a custodian or receiver to be appointed immediately to prevent irreversible harm to Bubblr and its shareholders. *Id.* Without the stewardship of a custodian or receiver, there is a high, imminent and increasing risk that Bubblr's management continues its corporate malfeasance until no shareholder's interest in the corporation is salvageable. *Id.*

5. GHS seeks appointment of Robert Stevens, an uninterested third party, as custodian under Wyoming Statute §17-16-748, or alternatively as receiver under Wyoming Statute §1-33-101(A)(vii), (viii), and Federal Rule of Civil Procedure Rule 66. (ECF 8).

## FACTUAL BACKGROUND

6. GHS is a shareholder in Bubblr pursuant to the Agreement and a Certificate of Designation as further detailed herein. *Id.* On March 7, 2022, GHS disbursed $300,000 to Bubblr in accordance with the Agreement in consideration for three hundred thirty-five (335) shares of Preferred Stock in Bubblr at a price of $1,000 per share; the additional 35 shares were provided as an equity incentive. *Id.* A Series C Preferred Stock Common Amendment was filed with the

Secretary of State in Wyoming on or about March 23, 2022 to reflect the Agreement. *Id.* GHS also received a Certificate of Designation as part of this investment ("Certificate of Designation"). *Id.*

7.      Bubblr was to concurrently issue a "Warrant to purchase up to a number of Warrant Shares equal to 75% of the number of shares of Conversion Shares issuable upon conversion of the Preferred Stock issued at the Initial Closing." *Id.* GHS was provided with a common stock purchase warrant for 1,942,161 warrant shares on March 4, 2022, at an exercise price of $0.3404 per share; this was later amended to reflect 941,599 warrant shares. *Id.*

8.      Additional closings occurred as GHS relied on false representations by Bubblr that funds would be allocated to technology development and were, instead, diverted to insider compensation:

(i)      On April 25, 2022, GHS disbursed $200,000 for 200 Preferred Shares and received 528,790 warrant shares as part of the second tranche with the exercise price of $0.3503. *Id.*

(ii)     On May 25, 2022, GHS disbursed $100,000 for 100 Preferred Shares and received 281,074 warrant shares as part of the third tranche with an exercise price of $0.217. *Id.*

(iii)    On June 24, 2022, GHS disbursed $100,000 for 100 Preferred Shares and received 281,074 warrant shares as part of the fourth tranche with an exercise price of $0.2236. *Id.*

9.      At Bubblr's request, GHS entered into a Waiver Agreement dated August 31, 2022 ("Waiver") which waived certain prohibitions on dilutive lending by Bubblr contained in the Certificate of Designation to allow the founder, CEO, President, Chief Platform Officer, and

Chairman of Bubblr, Steven Morris, to loan up to $600,000 to fund Bubblr's operations in exchange for "281,000 shares of common stock" in Bubblr "at a date prior to [Bubblr] registering any further securities with the Securities and Exchange Commission." *Id.* The Waiver specified that the note would not be convertible into shares; however, GHS believes conversion shares were issued to Mr. Morris, and he has sold these shares to third parties to raise capital. *Id.* Mr. Morris has sold such shares to private parties so without proper disclosures as required by the Agreement and pertinent regulations. *Id.*

10.    Mr. Morris is inflating the value of the note to conduct private sales to individuals, raise funds for Bubblr, and, subsequently, misappropriating these funds. *Id.* GHS believes based on circumstances that other shareholders are complicit in buying Mr. Morris's shares and promoting the stock while precluding GHS from receiving the shares due to GHS under the Agreement. *Id.* GHS has serious concern that Bubblr has diverted the proceeds to insider compensation and permitted or conducted selling activity adverse to investors and shareholders, while concealing material facts regarding misappropriation and insider shares. *Id.*

11.    In December 2024, GHS attempted to exercise conversion rights under the Agreement, but Bubblr refused to honor the request in breach of their agreements, having further defaulted under the agreements by failing to reserve appropriate shares for GHS. *Id.* Bubblr's counsel, Steven Walker, expressed during a call with Sarfraz Hajee, GHS's principal, that Mr. Walker recommended the Board issue the conversion shares that were due and that shares would be forthcoming; however, GHS subsequently received an email from Mr. Morris indicating they would not be issuing the conversion shares on advice of counsel. *Id.* Mr. Morris continues to misrepresent important information and failing to properly disclose information to the public and

Bubblr's shareholders. *Id.* Bubblr has failed to maintain a registration statement with the US Securities and Exchange Commission ("SEC") for the Preferred Shares and has not paid dividends when due. *Id.*

12. Bubblr has been and is insolvent. In June of 2025, total assets were roughly $1.36 million and total liabilities were roughly $3.69 million, reflecting a deficit of roughly $2.33 million. *Id.* Updated numbers from September 2025, which further highlight Bubblr's imminent insolvency, are discussed below.

13. In September 2025, Mr. Morris communicated to GHS regarding an issuance of 7.5 million shares after GHS requested a partial conversion of preferred shares. *Id.* A settlement was discussed by the parties which was worth $1.2 Million in cash payments. *Id.*

14. There are serious concerns that Mr. Morris is continuing to inflate notes due to himself and loan money to Bubblr, then subsequently converting those notes into shares, and then selling shares privately for personal gain and/or to cover up current company financial issues without proper public disclosure. *Id.* There is reason to believe that certain private shareholders are complicit in this concerted misappropriation of Bubblr's assets. *Id.* Trading activity has been particularly concerning as detailed in the attached Affidavit. *Id.*

15. Related-party debt of roughly $1.28 million *owed to Mr. Morris* is currently ahead of investors. *Id.* Bubblr has no accessible source of liquidity and is operating at a loss. *Id.* All shareholders are at risk given management's current actions and inactions. *Id.* The financial condition reflects insolvency, exposing investors and creditors to further dissipation, absent neutral control. *Id.* GHS, a Bubblr shareholder, estimates its total damages from these actions to be approximately $1,918,368.16 plus legal fees to date. *Id.*

16.    Mr. Morris' note is endlessly being converted to shares, and Mr. Morris is subsequently selling his unrestricted shares into the free market in lieu of a public offering to continue the operations of the insolvent Bubblr. *Id.* Subverting public offerings is prohibited and results in the dilution of shares while keeping shareholders deprived of material information regarding these transactions. Bubblr lacks a viable revenue model, has a nominal amount of cash on hand, and an accumulated deficit totaling $17,511,548, as of September 30, 2025. *Id.* The 10-Q filing with the SEC from September 30, 2025 demonstrates that total assets were roughly $1.35 million—with a significant portion of these assets being intangibles—and total liabilities were roughly $3.89 million, reflecting a deficit of roughly $2.54 million. *Id.* For the nine-month period ending September 30, 2025, Bubblr suffered a net loss of $886,596. *Id.* Comparatively, the nine-month revenues were $2,518 and operating expenses were $872,949, demonstrating that there is no viable revenue model. *Id.* Bubblr's cash on hand, a mere $696, reflects the dire circumstances necessitating the appointment of a custodian, or alternatively a receiver, to curb Bubblr's improper selling of unrestricted securities to third parties to fund its operations—this selling was admitted by Mr. Morris in paragraph 46 of Bubblr, Inc.'s *Draft Rebuttal*.

17.    As a result of the above conduct, shareholder value—including the value of GHS's investment—is sharply declining. *Exhibit 1 – Affidavit of Sarfraz Hajee.* Further, Bubblr's February 18, 2026, Form 8-K discloses that the stock was downgraded from the OTCQB market to the OTCID market because its stock price has remained below $.01 for 10 consecutive trading days, and it was unable to cure this deficit. *Id.*

18.    GHS is filing its motion for custodianship and requesting immediate relief as some concerning trading has occurred recently. From March 16 to March 23, 2026, 2,004,501 shares

were sold over 4 trading days, indicating an ongoing pattern: a convertible note seller has been selling shares presumably to the detriment of Bubblr's shareholders, including GHS. *Id.*

19.    GHS's counsel received a request to extend the answer deadline for Bubblr in this legal action due to imminent investor funding. GHS subsequently reached out to Mr. Morris to obtain guarantees regarding the funding. *Id.* Unsurprisingly, Mr. Morris did not reply and instead filed an answer on behalf of Bubblr. During the interim, the above discussed concerning trade activity was occurring. Mr. Morris engaged in private sales of his own stock while precluding GHS from shares under their agreements; this is further exacerbated by additional misconduct. *Id.* Bubblr has not paid dividends when due as detailed by the agreements with GHS, has failed to maintain a registration statement with the SEC, and, while GHS was precluded from converting their shares, Bubblr was flagged for promotional activity due to spikes in aggressive selling by unknown parties. *Id.*

20.    GHS has no way of knowing where the proceeds from selling stock have been going. *Id.* A custodianship or receivership is urgently required. *Id.* Bubblr is insolvent. Shareholders are subject to further dissipation, absent neutral control. Immediate relief must be granted to ensure shareholders retain what equity remains, if any. *Id.* For the foregoing reasons, GHS, as a shareholder in Bubblr, brings this Wyoming cause of action in diversity to appoint a custodian, or in the alternative a receiver, to stop the improper activity by management, preventing further irreparable harm to Bubblr and its shareholders. *Id.*

## ANALYSIS

*Wyoming Statute § 17-16-748*

21.    Under Wyoming Statute § 17-16-748, a custodian or receiver may be appointed by

the Court where "those in control of the corporation are acting fraudulently and irreparable injury to the corporation is threatened or being suffered." Wyo. Stat. § 17-16-748. In Wyoming, "the elements of fraud are: (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Singer v. Lajaunie*, 2014 WY 159, ¶ 26, 339 P.3d 277, 285 (Wyo. 2014) quoting *Excel Construction, Inc. v. HKM Engineering, Inc.,* 2010 WY 34, ¶ 33, 228 P.3d 40, 48–49 (Wyo. 2010). Alternatively, fraud may be constructive, which is defined as "consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects." *Campbell v. Davidson*, 2023 WY 100, ¶ 28, 537 P.3d 734, 743 (Wyo. 2023) (quoting *Johnson v. Reiger*, 2004 WY 83, ¶ 22, 93 P.3d 992, 998 (Wyo. 2004).

22.     Appropriately, GHS requests a custodian be appointed under this statute because of Bubblr's fraudulent activity. GHS waived a prohibition on dilutive lending contained within the Certificate of Designation and was induced by false premises. *Exhibit 1 – Affidavit of Sarfraz Hajee.* Under the Waiver, conversion shares were not to be issued to Mr. Morris; however, GHS believes based on public filings and Mr. Morris' own admission that shares were in fact issued to Mr. Morris, and Mr. Morris has sold these shares to third parties. *Id*. Moreover, dividends have not been issued in accordance with the Agreement and Bubblr refused to authorize conversions for GHS as required by their agreements. *Id.* Bubblr has made, and continues to make, false promises regarding the redemption and/or convertibility of the shares to induce investment by GHS. *Id.* GHS reasonably believed these representations to be true because they were subject to the written,

signed agreements that were disclosed on SEC filings and with the Wyoming Secretary of State. *Id.* GHS relied on these false assertions made in the agreements with Bubblr and has sustained significant losses due to Bubblr's false representations. *Id.*

23.     Mr. Morris is believed to be connected to promotions to manipulate the stock and facilitate the selling of his shares by a private party while denying GHS the ability to convert their shares. *Id.* Recently, from March 16 to March 23, Mr. Morris facilitated the selling of 2,004,501 shares, either himself or through a third party. *Id.* Irreparable injury is being threatened and suffered. Bubblr operates with a large, accumulated deficit, is experiencing liquidity failure, and there are significant doubts about the company's ability to continue as a going concern. *Id.* Bubblr's financials reflect insolvency or imminent insolvency, exposing investors and creditors to further dissipation, absent neutral control. *Id.* A custodian is necessary to protect all shareholders.

*Alternative Relief: Appointment of Receiver – Wyoming Statute § 1-33-101*

24.     In the alternative, GHS requests relief under the Wyoming receivership statute. A receivership is proper under Wyoming law. This Court applies the Wyoming law requirements for receivership. *Universitas Education, LLC v. Avon Capital, LLC*, 124 F.4th 1231, 1249-50 (10th Cir. 2024).[1] The corporation is insolvent or in imminent danger of insolvency and "where receivers have been appointed by courts of equity," a receivership is appropriate. Wyo. Stat. § 1-33-101.

---

[1] Wyoming law is applied to assess the need for a receivership. However, in the event the Court applies federal law, the circumstances warrant the appointment of a receiver under that standard as well, as alleged in the First Amended Complaint and as demonstrated through the facts and analysis provided within this motion.

While insolvency is not succinctly defined, insolvency generally falls under two definitions. *Keystone Capital Partners, LLC v. Life Clips, Inc.,* No. CH-2025-0000006, 2025 WL 1748460, ¶17, at *3 (Wy. Ch. June 18, 2025).

> One definition-the "equity" test-holds a debtor insolvent "when he is unable to pay his debts from his own means as they become due[.]" *Harle-Haas Drug Co. v. Rogers Drug Co.*, 19 Wyo. 35, 113 P. 791, 798 (Wyo. 1911); 15A Fletcher Cyc. Corp. § 7360. The second, known as the "balance sheet" test, equates insolvency with "the insufficiency of the assets of a debtor to pay his debts in full." *Harle-Haas* 113 P. at 798; 15A Fletcher Cyc. Corp. § 7360.

*Keystone Capital Partners, LLC v. Life Clips, Inc.*, No. CH-2025-0000006, 2025 WL 1748460, ¶17, at *3 (Wy. Ch. June 18, 2025).

25.    In the context of a receivership under the above Wyoming statute, the balance sheet test is appropriate. See *Id.* ¶18*,* at *4. Accordingly, where there is "(1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or (2) an inability to meet maturing obligations as they fall due in the ordinary course of business" insolvency is properly pled." *Id.* ¶20*,* at *4 quoting *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004). Insolvency may be found imminent where "risk of asset value depreciation, corporate abandonment, and a lack of operational funds" are present. See *Id.* ¶22, at 4, quoting *Stockmen's Nat. Bank of Casper v. Calloway Shops*, 41 Wyo. 232, 285 P. 146, 153 (1930). Additionally, receiverships in equity are appropriate where there is gross mismanagement or abandonment of principles of the company. *Id.* ¶23, at *5.

26.    Based on the foregoing, a receiver should be appointed. Bubblr is insolvent under the balance sheet test (excluding the irregular sale of 2,004,501 shares between March 16 to March 23, 2026 presumably to fund Bubblr due to its insolvency). There are no reasonable prospects for funding or generating revenue. Bubblr has been unable to obtain financing for the previous 3.5

years and the balance sheet demonstrates that the debt load is unsustainable. *Id.* The nine-month revenues were $2,518 and operating expenses were $872,949, demonstrating that there is no viable revenue model. *Id.* Bubblr is unlikely to persist—the stock price has dropped in value and there is "significant doubt [] regarding the company's ability to continue as a going concern." *Id.* Moreover, Bubblr is unable to meet maturing obligations, such as the obligations to GHS. *Id.*

27.     In the event this Court doubts insolvency under these circumstances, which it respectfully should not, there is an imminent risk of insolvency. The risk of asset value depreciation exists because the stock has already been demoted on OTC markets—Bubblr was recently downgraded from the OTCQB market to the OTCID market due to its deflated stock price. *Id.* There is also a risk of lack of operational funds because the accumulated deficit as of September 30, 2025 was $17,511,548 and cash on hand was only $696. *Id.* Finally, there is a risk of corporate abandonment. Mr. Morris is not physically located in the United States and primarily operates Bubblr in the United Kingdom and has refused to fulfill agreements with GHS. (ECF 10); *Id.* It appears likely he will abandon the corporation given his ongoing actions and inactions.

## CONCLUSION

Based on the allegations and claims for relief in the First Amended Complaint and the facts presented herein, Petitioner requests the Court appoint Robert Stevens as custodian, or in the alternative as receiver, of Bubblr, Inc., allowing him to exercise all of the powers of the corporation, through or in place of its board of directors, to the extent necessary to manage the business and affairs of the corporation pursuant to Wyoming and federal law, and for such other relief as the Court may deem just and proper.

DATED this 3rd day of April, 2026.

GHS INVESTMENTS, LLC, PETITIONER

By: _/s/ Sean Larson_____
Sean M. Larson, Wyo. Bar #7-5112
Connor J. Cassidy, Wyo. Bar #8-7270
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
slarson@hkwyolaw.com
ccassidy@hkwyolaw.com

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd of April, 2026, a true and correct copy of the foregoing was

served as follows:

Steve Morris                                    [ X ] U.S. Mail
c/o Registered Agents, Inc.          [    ] CM/ECF
30 N. Gould Street, Ste. R            [    ] Fax:
Sheridan, WY 82801                     [ X ] E-mail: steve.morris@ethicalweb.ai

_/s/ Melissa Underhill_____
HATHAWAY & KUNZ, LLP