# EXHIBIT 1

Sean M. Larson, Wyo. Bar #7-5112
Connor J. Cassidy, Wyo. Bar #8-7270
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
slarson@hkwyolaw.com
ccassidy@hkwyolaw.com

ATTORNEYS FOR PETITIONER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| IN THE MATTER OF:<br>BUBBLR, INC.,<br>a Wyoming Corporation,<br><br>    GHS INVESTMENTS, LLC,<br>    a Nevada Limited Liability Company,<br><br>          Petitioner. | )<br>)<br>)<br>)<br>)   Case No. 2:26-CV-20<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT OF CUSTODIAN OR RECEIVER**

I, Sarfraz Hajee, being first duly sworn and having personal knowledge of the matters set forth below, do depose and say:

1.    I am over the age of 18, competent to testify, and provide this Affidavit as to my personal knowledge and belief.

2.    I have read the First *Amended Complaint*, Bubblr, Inc.'s *Draft Rebuttal with General Denials and Affirmative Narrative*, and the *Request for 7-Day Extension of Time to Respond* in the above-captioned case; have reviewed public information involving Bubblr, including SEC filings such as Form 10-Qs; and have knowledge as to Mr. Morris's conduct at Bubblr since March, 2022.

3.      GHS is a shareholder in Bubblr pursuant to the parties' Security Purchase Agreement (the "Agreement").

4.      Bubblr diverted GHS's investment to salaries, did not allocate funds to the requisite corporate purposes, defaulted on its obligations under the Agreement, and withheld conversions as required by the Agreement despite contractual maturity. BBLR induced GHS to enter into the investments and waivers through false representation.

5.      Bubblr concealed and mischaracterized the use of the proceeds from GHS. GHS communicated their concerns to Bubblr but were met with delay tactics and lack of communication.

6.      GHS's investments were, and are currently being, misappropriated for Bubblr's management's personal gain. Irreparable injury is being threatened and suffered as Bubblr is insolvent or in imminent danger of insolvency.

7.      Bubblr's current CEO Steve Morris continues to improperly convert stock to himself as an insider, sell that insider stock privately, and has failed to properly disclose these transactions publicly. GHS has reason to believe this has been a common practice under this management and this management has continued to cause injury to the Company and its Shareholders, including GHS.

8.      Given management's practices including a lack of disclosure and  misappropriation of Company assets and resources, a custodian or receiver should be appointed immediately to prevent additional damage to Bubblr's shareholders.

9.      Without the stewardship of a custodian or receiver, there is a high, imminent and increasing risk that Bubblr's management continues its corporate malfeasance until no shareholder's interest in the corporation is salvageable.

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT OF CUSTODIAN OR RECEIVER

10.     GHS seeks appointment of Robert Stevens, an uninterested third party, as custodian under Wyoming Statute §17-16-748, or alternatively as receiver under Wyoming Statute §1-33-101(A)(vii), (viii), and Federal Rule of Civil Procedure Rule 66.

11.     GHS is a shareholder in Bubblr pursuant to the Agreement and a Certificate of Designation as further detailed herein. On March 7, 2022, GHS disbursed $300,000 to Bubblr in accordance with the Agreement in consideration for three hundred thirty-five (335) shares of Preferred Stock in Bubblr at a price of $1,000 per share; the additional 35 shares were provided as an equity incentive. A Series C Preferred Stock Common Amendment was filed with the Secretary of State in Wyoming on or about March 23, 2022 to reflect the Agreement and Certificate of Designation ("Amendment"). GHS also received a Certificate of Designation as part of this investment ("Certificate of Designation").

12.     Bubblr was to concurrently issue a "Warrant to purchase up to a number of Warrant Shares equal to 75% of the number of shares of Conversion Shares issuable upon conversion of the Preferred Stock issued at the Initial Closing." GHS was provided with a common stock purchase warrant for 1,942,161 warrant shares on March 4, 2022, at an exercise price of $0.3404 per share; this was later amended to reflect 941,599 warrant shares.

13.     Additional closings occurred as GHS relied on false representations by Bubblr that funds would be allocated to technology development and were, instead, diverted to insider compensation: On April 25, 2022, GHS disbursed $200,000 for 200 Preferred Shares and received 528,790 warrant shares as part of the second tranche with the exercise price of $0.3503. On May 25, 2022, GHS disbursed $100,000 for 100 Preferred Shares and received 281,074 warrant shares as part of the third tranche with an exercise price of $0.217. On June 24, 2022, GHS disbursed $100,000 for 100 Preferred Shares and received 281,074 warrant shares as part of the fourth

tranche with an exercise price of $0.2236. The Waiver specified that the shares would not be convertible; however, GHS believes conversion shares were issued to Mr. Morris, and he has sold these shares to third parties to raise capital. Mr. Morris has done so without proper disclosure as required by the Agreement and pertinent regulations.

14.     At Bubblr's request, GHS entered into a Waiver Agreement dated August 31, 2022 ("Waiver") which waived certain prohibitions on dilutive lending by Bubblr contained in the Certificate of Designation to allow the founder, CEO, President, Chief Platform Officer, and Chairman of Bubblr, Steven Morris, to loan up to $600,000 to fund Bubblr's operations. The Waiver specified that the Note would not be convertible; however, GHS believes, based on Mr. Morris' own admission that conversion shares were issued to Mr. Morris, and he has sold these shares to third parties to raise capital. Mr. Morris has sold such shares to private parties so without proper disclosures as required by the Agreement and pertinent regulations.

15.     Mr. Morris is inflating the note provided by the Waiver to conduct private sales to individuals, raise funds for Bubblr, and, subsequently, misappropriating these funds. GHS believes based on the circumstances that other shareholders are complicit in buying Mr. Morris's shares and promoting the stock while precluding GHS from receiving their shares.

16.     GHS has serious concern that Bubblr has diverted the proceeds to insider compensation and permitted or conducted selling activity adverse to investors, while concealing material facts regarding misappropriation and insider shares.

17.     Bubblr has current assets of $8,962 and liabilities of $2,388,568 reflecting a massive working capital deficit. Cash on hand is only $4,104 demonstrating immediate liquidity failure. For the six-month period ending June 30, 2025, Bubblr suffered a net loss of $650,760; six-month revenues were $1,353 and operating expenses were $658,475 demonstrating that there

is no viable revenue model. Bubblr's cumulative deficit was $17,511,548, as of June 30, 2025. Bubblr has expressly disclosed that "significant doubt persists regarding the company's ability to continue as a going concern."

18.    In December 2024, GHS attempted to exercise conversion rights under its agreements, but Bubblr refused to honor the Agreement. In fact, Bubblr's counsel, Steven Walker, expressed during a call with me, as GHS's principal, that Mr. Walker had recommended the Board issue the conversion shares that were due and that the shares would be forthcoming; however, GHS subsequently received an email from Mr. Morris indicating they would not be issuing the conversion shares on advice of counsel. Mr. Morris continues to misrepresent important information and failing to properly disclose information to the public and Bubblr's shareholders. Additionally, Bubblr has failed to maintain a registration statement with the US Securities and Exchange Commission ("SEC") for the Preferred Shares and has not paid dividends when due.

19.    Bubblr has been and is insolvent. In June of 2025, total assets were roughly $1.36 million and total liabilities were roughly $3.69 million, reflecting a deficit of roughly $2.33 million. More updated numbers from September 2025 are discussed below.

20.    In September 2025, Mr. Morris communicated to GHS regarding an issuance of 7.5 million shares after GHS requested a partial conversion of preferred shares. A settlement was discussed by the parties which was worth $1.2 Million.

21.    Mr. Morris offered GHS a structured financial settlement in the alternative because "there was a substantial investment deal coming in that would allow them to transfer funds before October 1, 2025."

22.    Mr. Morris stated that he was wary of a "Stock Promotion" flag in over-the-counter markets, which could jeopardize ongoing trading and risk renewed scrutiny. GHS believes Mr.

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT
OF CUSTODIAN OR RECEIVER

Morris was complicit in the "Stock Promotion" flag and asked two investors to intervene; these investors are likely also complicit in the improper selling of shares by Mr. Morris based on Mr. Morris' own admission of selling shares privately to raise the Company Funds instead of the Company implementing a formal and transparent offering of its Securities.

23.     The proposed settlement was for a total of $1.2 million, payable in two stages on October 1, 2025, and February 1, 2026. If the first payment was not made on October 1, 2025, the 7.5 million shares were to be issued as per the Agreement and the Certificate of Designation. In exchange, GHS was asked to refrain from selling additional stock and to allow Bubblr to proceed unencumbered by their Agreement and the Certificate of Designation. GHS sent a counteroffer, which was never accepted, and was met with delay by Mr. Morris. Negotiations continued until Bubblr went silent. Bubblr did not issue the 7.5 million shares or any payment by December 1, 2025. Rather, Bubblr used delay tactics, such as continuously stating that funds were coming, listing various reasons for delay, and switching representatives to speak with GHS. Bubblr defaulted on multiple obligations under the Agreement and the Certificate of Designation, and withheld conversions despite contractual maturity.

24.     Bubblr executed a Securities Purchase Agreement on July 15, 2025, for a Convertible Promissory Note, executed a second tranche Convertible Promissory Note on August 15, 2025, and on September 30, 2025, the outstanding principal on convertible loan notes was $114,000. The trading activity on Bubblr spiked on or around July 15th, August 15th and September 29th. The activity around July 15th, August 15th, and September 30th indicates that the stock was likely being promoted or manipulated while Mr. Morris and his cohorts were selling to each other and into the market. For example, an individual, Joachim Swensson, bought 5.855 percent of Bubblr shares from Mr. Morris, which evidences that Mr. Morris was raising money

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT OF CUSTODIAN OR RECEIVER

while failing to redeem GHS's positions and granting others' shareholders rights to securities during that time. Critically, the self-dealing activity demonstrated above is reflected in Bubblr's 10-Q filing with the SEC from June 30, 2025.

25. There are serious concerns that Mr. Morris is continuing to issue inflated notes to himself and loan money to Bubblr, subsequently converting those notes into shares, and then selling shares privately for personal gain and/or to cover up current company financial issues without proper public disclosure. There is reason to believe that certain private shareholders are complicit in this concerted misappropriation of Bubblr's assets. Trading activity has been particularly concerning.

26. Related-party debt of roughly $1.28 million owed to Mr. Morris is currently ahead of investors. Bubblr has no accessible source of liquidity and is operating at a loss. All shareholders are at risk given management's current actions and inactions. The financial condition reflects insolvency, exposing investors and creditors to further dissipation, absent neutral control.

27. GHS, a Bubblr shareholder, estimates its total damages from these actions to be approximately $1,918,368.16 plus legal fees to date to date.

28. Mr. Morris' note is endlessly being converted to shares, and Mr. Morris is subsequently selling his unrestricted shares into the free market in lieu of a public offering to continue the operations of the insolvent Bubblr. Subverting public offerings is prohibited and results in the dilution of shares while keeping shareholders deprived of material information regarding these transactions.

29. Bubblr lacks a viable revenue model, has a nominal amount of cash on hand, and an accumulated deficit totaling $17,511,548, as of September 30, 2025. The 10-Q filing with the SEC from September 30, 2025, demonstrates that total assets were roughly $1.35 million—with a

significant portion of these assets being intangibles—and total liabilities were roughly $3.89 million, reflecting a deficit of roughly $2.54 million. For the nine-month period ending September 30, 2025, Bubblr suffered a net loss of $886,596. Comparatively, the nine-month revenues were $2,518 and operating expenses were $872,949 demonstrating that there is no viable revenue model. Bubblr's cash on hand, a mere $696, reflects the dire circumstances necessitating Bubblr's improper selling of unrestricted securities to third parties to fund its operations—this selling was admitted by Mr. Morris in paragraph 46 of Bubblr, Inc.'s *Draft Rebuttal*.

30.     As a result of the above conduct, shareholder value—including the value of GHS's conversion rights—is sharply declining. Bubblr's February 18, 2026, Form 8-K discloses that the stock was downgraded from the OTCQB market to the OTCID market because its stock price has remained below $.01 for 10 consecutive trading days, and it was unable to cure this deficit.

31.     Bubblr's management/board members have been changed at least three times during GHS's four-year investment. To GHS's information, Mr. Morris has facilitated these changes to support Bubblr's wrongful conduct which further necessitates the appointment of a custodian or receiver.

32.     GHS is filing its motion for custodianship and requesting immediate relief as some concerning trading has occurred recently. From March 16 to March 23, 2026, 2,004,501 shares were sold over 4 trading days, indicating an ongoing pattern: a seller has been selling BBLR shares aggressively. GHS does not have transparency as to whether the proceeds are benefitting BBLR or being misappropriated.

33.     GHS's counsel received a request to extend the answer deadline for Bubblr in this legal action claiming that Bubblr would receive imminent funding and resolve this dispute. GHS subsequently reached out to Mr. Morris to obtain guarantees regarding the funding. Unsurprisingly,

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT
OF CUSTODIAN OR RECEIVER

Mr. Morris did not reply and instead imprudently filed an answer on behalf of Bubblr. During the interim, the above discussed concerning trade activity was occurring.

34.    Mr. Morris engaged in private sales of his own stock while precluding GHS from shares under their agreements; this is further exacerbated by additional misconduct. Bubblr has not paid dividends when due as detailed by the agreements with GHS, has failed to maintain a registration statement with the SEC, and, while GHS was precluded from converting their shares, Bubblr was flagged for promotional activity due to spikes in aggressive selling by unknown parties.

35.    GHS has no way of knowing where the proceeds from selling stock have been going. A custodianship or receivership is urgently required. Bubblr is insolvent. Shareholders are subject to further dissipation, absent neutral control.

36.    Immediate relief must be granted to ensure shareholders retain what equity remains, if any.

37.    For the reasons within our Motion, GHS, as a shareholder in Bubblr, brings this Wyoming cause of action in diversity to appoint a custodian, or in the alternative a receiver, to stop the improper activity by management, preventing further irreparable harm to Bubblr and its shareholders.

38.    GHS waived a prohibition on dilutive lending contained within the Certificate of Designation based on false premises by the Company. Under the Waiver, conversion shares were not to be issued to Mr. Morris; however, GHS believes these shares were issued, and Mr. Morris has sold these shares to third parties by his own admission.

39.    Moreover, dividends have not been issued in accordance with the Agreement and Bubblr refused to authorize conversions for GHS as required by their agreements. As a result, it is

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT
OF CUSTODIAN OR RECEIVER

9

apparent that Bubblr made false promises regarding the convertibility of the shares to induce investment by GHS. GHS reasonably believed these representations to be true because they were subject to the written, signed agreements that were disclosed on SEC filings and with the Wyoming Secretary of State. GHS relied on these false assertions made in the agreements with Bubblr and have sustained large losses due to Bubblr's false representations.

40.    Additionally, GHS' believes Mr. Morris is connected to promotions to manipulate the stock and facilitate the selling of his shares by a private party while denying GHS the ability to convert their shares. Irreparable injury is being threatened and suffered. Bubblr operates with a large, accumulated deficit, is experiencing liquidity failure, and there are significant doubts about the company's ability to continue as a going concern. Bubblr's financials reflect insolvency or imminent insolvency, exposing investors and creditors to further dissipation, absent neutral control. A custodian is necessary to protect all shareholders.

41.    Bubblr is insolvent under the balance sheet test (excluding the irregular sale of 2,004,501 shares between March 16 to March 23, 2026 presumably to fund Bubblr due to its insolvency. There are no reasonable prospects for funding or generating revenue despite management's claims otherwise. the Company's balance sheet demonstrates that the debt load is unsustainable. The nine-month revenues were $2,518 and operating expenses were $872,949, demonstrating that there is no viable revenue model. Bubblr is unlikely to persist—the stock price has dropped in value and there is "significant doubt [] regarding the company's ability to continue as a going concern." Moreover, Bubblr is unable to meet maturing obligations, such as the obligations to GHS.

42.    There is an imminent risk of insolvency. The risk of asset value depreciation exists because the stock has already been demoted on OTC markets—Bubblr was recently downgraded

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT
OF CUSTODIAN OR RECEIVER

from the OTCQB market to the OTCID market due to its deflated stock price. There is also a risk of a lack of operational funds because the accumulated deficit as of September 30, 2025, was $17,511,548 and cash on hand was only $696.

43.     Finally, there is a risk of corporate abandonment. Mr. Morris is not physically located in the United States and primarily operates Bubblr in the United Kingdom, has refused to fulfill agreements with GHS. It appears likely he will abandon the corporation given his ongoing actions and inactions.

FURTHER AFFIANT SAYETH NOT.

DATED this ___3rd___ of April, 2026.

_____
Sarfraz Hajee

STATE OF _NEW YORK_  )
                     ) ss.
COUNTY OF _NASSAU_   )

Acknowledged, subscribed and sworn to before me by Sarfraz Hajee, this __3rd__ day of April, 2026.

Witness my hand and official seal.

Notary Public _____

My Commission expires: August 22, 2026

JENNIFER LAUREN YANES
Notary Public - State of New York
NO. 01YA6439912
Qualified in Nassau County
My Commission Expires Aug 22, 2026

AFFIDAVIT OF SARFRAZ HAJEE IN SUPPORT OF MOTION FOR APPOINTMENT
OF CUSTODIAN OR RECEIVER

11